# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                            No. CR 17-1923 RB

JOHN LEROY MILNE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

A jury in Las Cruces, New Mexico, convicted John Leroy Milne of conspiracy to distribute marijuana and possession with intent to distribute marijuana. After he was convicted, Mr. Milne renewed his previously-filed motion for a mistrial (Doc. 91), contending that he is entitled to a new trial because the government improperly altered an admitted exhibit and because the alteration exposed the jury to a marijuana odor. Mr. Milne also asks the Court to find that the government acted with the intent to provoke a mistrial. For the reasons explained below, the Court denies all of Mr. Milne's requests.

## FACTS

On the morning of June 23, 2017, Matthew Defayette, an agent with the United States Border Patrol, saw a brown Ford Explorer ("Explorer") with tinted windows heading north on a stretch of road notorious for illegal smuggling. Agent Defayette did not recognize the Explorer as a local vehicle, and when he could not see a license plate, Agent Defayette decided to investigate the Explorer. Agent Defayette's investigation that morning resulted in the arrests of John Leroy Milne and Manuel Pavon-Rodriguez after Border Patrol agents discovered five burlap backpacks containing ten duct-taped bundles in the cargo area of the Explorer. The

government claimed that those ten bundles, which were each about 24 by 12 by 12 inches, held 111.8 kilograms (around 246 pounds) of marijuana.

The government tried Mr. Milne and Mr. Pavon-Rodriguez together for conspiracy to distribute marijuana and possession with intent to distribute marijuana. At trial, the government displayed ten hefty, duct-taped bundles to the jury during Agent Defayette's testimony. The government contended that the bundles had been removed from the burlap backpacks. The government later formally introduced the bundles into evidence as a single exhibit. The Court asked the government to maintain custody of the exhibit because the Court did not have an airtight, secure room in which to store bulk marijuana throughout the trial.

As the case continued, the government's witnesses revealed that the government had chemically tested eleven samples from *one* of the ten bundles and determined that the samples all contained marijuana. After the government rested its case, both Mr. Milne and Mr. Pavon-Rodriguez moved for a judgment of acquittal under Rule 29. *See* Fed. R. Crim. P. 29. Defendants argued that there was insufficient evidence to sustain the charges against them because the government did not test nine of the ten bundles. After consulting the relevant law, the Court denied the defendants' motion.

Realizing that it had greatly diminished its case by not testing nine of the ten bundles, the government attempted to fix its mistake by opening and testing the other bundles at the courthouse. The government then asked the court for permission to reopen its case and present its new findings to the jury. Unfortunately for the government, by opening and testing the bundles, it had altered an admitted exhibit without the court's approval. Additionally, by opening the bundles in the attorney conference room, located between the courtroom and the outside hall, an appreciable marijuana odor had spread into the hall. Jurors adjourning for the day had to pass

through that hall as they exited the courthouse. The Court was surprised by the government's actions and admonished the government for its irresponsible handling of an admitted exhibit. Consequently, the Court denied the government's request to reopen its case and refused to permit the jury to see the bundles again.

Both Mr. Milne and Mr. Pavon-Rodriguez asked the Court to grant a mistrial on the bases that the government tampered with an admitted exhibit and that the odor of marijuana tainted the jury. The Court took the mistrial motion under advisement and allowed the case to proceed to the jury. The jury ultimately convicted Mr. Milne of all charges and acquitted Mr. Pavon-Rodriguez of all charges. Mr. Milne then renewed his mistrial motion, which the Court now considers.

## DISCUSSION

### I. Jury exposure to extraneous information.

#### A. The relevant law.

The Sixth Amendment guarantees a defendant the right to be tried by an impartial jury. *See* U.S. Const. amend. VI. A jury is impartial if it is, among other things, willing and able to decide the case solely on the evidence properly presented during trial. *See Stouffer v. Duckworth*, 825 F.3d 1167, 1177 (10th Cir. 2016). To enforce the defendant's Sixth Amendment right, courts guard the jury from extraneous information that may taint the jury's impartiality. *See id.* No trial is perfect, however, and the Constitution recognizes that it is "virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Id.* at 1177–78. When a jury is exposed to extraneous information, the trial judge must determine, in light of all the facts and circumstances of the case, whether the extraneous information has so tainted the jury that the defendant is entitled to a new trial under the Sixth Amendment. *See id.*

The Tenth Circuit has articulated two different standards for a trial judge to apply when assessing the impact of extraneous information on a jury. *See Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1241 (10th Cir. 2000). One standard calls for the trial judge to grant a new trial if there is the "slightest possibility" that the extraneous information affected the verdict. *See id.* (citations omitted). The other standard calls for the trial judge to give a presumption of prejudice to the defendant when the jury is exposed to extraneous information. *See id.* Only if the government rebuts the presumption by showing that the exposure was harmless beyond a reasonable doubt does the burden shift onto the defendant to show actual prejudice. *See id.*; *see also Stouffer* 825 F.3d at 1178. The key distinction between the two standards is who holds the initial burden of proof: under the "slightest possibility" standard, the burden is on the moving party to show prejudice, whereas under the "presumption of prejudice" standard, the burden is on the nonmoving party to show that the exposure was harmless. *See Ingersoll-Rand*, 214 F.3d at 1241–42. Because the cases considered came out the same way under either standard, the Tenth Circuit, exercising its judicial restraint, has repeatedly declined to decide which standard controls.[1] *See, e.g.*, *Ingersoll-Rand*, 214 F.3d at 1242; *United States v. Muessig*, 427 F.3d 856, 865 (10th Cir. 2005).

Both standards recognize, however, that the trial judge is uniquely qualified to assess the prejudicial effect of extraneous information on a jury since the trial judge "has the advantages of close observation of the jurors and intimate familiarity with the issues at trial." *See Mayhue v. St. Francis Hosp. of Wichita, Inc.*, 969 F.2d 919, 922 (10th Cir. 1992); *see also Ingersoll-Rand*, 214

---

[1] The Tenth Circuit sometimes holds out only the second standard as the law. *See Stouffer* 825 F.3d at 1177–78. At first blush, the second standard appears to comport with the Supreme Court's decision in *Remmer v. United States*, 347 U.S. 227 (1954), which puts the burden on the government to rebut the presumption that outside communication with jurors is prejudicial. *See id.* at 229. However, only *en banc* consideration or an intervening Supreme Court decision may invalidate precedent set by another Tenth Circuit panel. *See United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014). Since neither has happened, the Court adopts the *Ingersoll-Rand* formulation as the more complete statement of the Circuit's law.

F.3d at 1242. The trial judge's unique advantages translate into broad discretion on how to handle allegations of jury taint by exposure to extraneous information, including discretion on whether to hold a hearing on the exposure. *See United States v. Davis*, 60 F.3d 1479, 1483 (10th Cir. 1995). Thus, while the Tenth Circuit has previously said that the "proper remedy" to allegations of juror exposure to extraneous information is for the district court to hold a hearing, the Circuit has clarified that a hearing is not mandatory, even where a hearing might be prudent or otherwise appropriate. *See id.* For example, given Federal Rule of Evidence 606(b)'s limit on the trial judge to ask jurors only about the nature of exposure to outside information, not the effect of the information on the juror, the trial judge may determine that it would be an "exercise in futility" to hold an evidentiary hearing when the nature of the exposure is already clear. *See* Fed. R. Evid. 606(b); *see also Davis*, 60 F.3d at 1483.

The trial judge's unique advantages also translate into broad discretion to determine, after examining the facts and circumstances of the case, whether the extraneous information was so prejudicial that the jury could no longer be impartial. *See Ingersoll-Rand*, 214 F.3d at 1242 ("The trial judge is . . . 'uniquely qualified to appraise the probable effect of information on the jury, the materiality of the extraneous material, and its prejudicial nature.' ") (internal citations omitted). If the judge finds that the jury cannot be impartial, then the defendant is entitled to a new trial under the Sixth Amendment. *See Stouffer*, 825 F.3d at 1177–78.

### B. Analysis of jury's exposure to extraneous information.

When the bundles were initially brought into the courtroom, they were wheeled in deliberately, dramatically, on a large cart. Ten large duct-taped packages, alleged to be more than 240 pounds of marijuana, piled on top of the cart. The government wheeled the cart in front of the jury, just a few feet away from the jury box. Several jurors grimaced. One held up his hands

5

and turned his head. Another juror gestured as if turned off by the pungent odor of marijuana. For approximately 18 minutes, as the parties questioned Agent Defayette, the jury was exposed to the significant odor of raw marijuana. Agent Defayette's testimony prominently discussed the smell of the bundles and suggested that Mr. Milne must have known that the bundles contained marijuana.

After Agent Defayette's testimony, the government removed the cart, and the jury never saw the bundles again. In the attorney conference room, located between the courtroom and the hallway to the elevator, the government later opened each bundle to confirm that each contained marijuana. Mr. Milne claims that by opening the bundles, the government released a strong marijuana odor into the hallway outside the courtroom, exposing jurors to extraneous sensory information and tainting the jurors such that they could no longer be impartial. (*See* Doc. 91 at 5.)

Before instructing the jury on the final day of trial, the Court held a hearing and allowed each side to present evidence regarding the alleged odor of marijuana in the hallway outside the courtroom. Based on the proffers from both sides, the Court concluded that the government stored the bundles in the attorney conference room, out of the jury's sight. The government cut pizza slice-shaped openings in the bundles to run field tests. There was a strong marijuana odor that seeped through two sets of doors and into the outside hall. Jurors breaking for the day would have passed through the affected area of the hall. Given the length of the hall,[2] jurors would have experienced the smell, if at all, for at most 25 seconds. Because the proffers sufficiently apprised the Court of the general nature of the jury's exposure to extraneous information, and because Rule 606(b) restricts the Court to general inquiries about the nature of the exposure, the Court

---

[2] The hall is a relatively open area with forced air conditioning.

chose not to hold an evidentiary hearing with jurors since the limited utility of such a hearing would not justify the risk of highlighting extraneous sensory information to the jury.

After considering the facts and circumstances of the trial, as well as the arguments of the attorneys, the Court determines that, under either of the Tenth Circuit's standards for evaluating the effect of extraneous information on a jury, the jury's exposure to the marijuana odor in the hallway was harmless beyond a reasonable doubt. Critical in the Court's determination is the fact that the jury had already smelled a powerful marijuana odor when the bundles were introduced at trial.

Here, it is important to note that the bundles, and their attendant odor, were properly presented to the jury. Because a central issue of the case against Mr. Milne was knowledge of the marijuana, the smell of the bundles was particularly probative. The smell of the bundles at trial would only have been improperly prejudicial to the extent that it was stronger than the smell when the bundles were still in the burlap backpacks. The Court is wholly unconvinced that the burlap backpacks mitigated the smell of marijuana to such an extent as to make the smell of the bundles at trial substantially more prejudicial than probative. *See* Fed. R. Evid. 403. Nor was there any indication, despite the strength of the odor in the courtroom, that the jury was unduly distracted or could not follow the testimony of Agent Defayette. Additionally, the Tenth Circuit has previously allowed the display of 208.2 kilograms of marijuana to the jury, nearly double the amount here. *See United States v. Siyam*, 325 F. App'x 675, 679–80 (10th Cir. 2009).

Further, Mr. Milne was able to argue to the jury that the burlap backpacks mitigated the smell they experienced in the courtroom. *See United States v. Dunn*, 961 F. Supp. 249, 252 (D. Kan. 1997) (rejecting defendant's request for a new trial based on odor of marijuana in the courtroom partially because the defense was able to argue to the jury the difference in the odor-

producing circumstances of the marijuana in the courtroom). Unlike the case in *United States v. Garcia*, 986 F.2d 1135 (7th Cir. 1993), which Mr. Milne cites, the alleged marijuana here was not displayed during either of the defendants' case in chief, nor were the marijuana packages open. *See Siyam*, 325 F. App'x at 679 (distinguishing *Garcia* on these grounds). Lastly, the jury only viewed the marijuana for about 18 minutes, which was not an unreasonable length of time, and there is no indication that the government acted in bad faith in displaying the marijuana. *See United States v. Ramos Rodriguez*, 926 F.2d 418, 420–21 (5th Cir. 1991) (ruling that government's display of 227 pounds of marijuana to the jury for four hours was not unduly prejudicial absent evidence that government acted in bad faith).

The Court finds that the strong odor of marijuana in the hallway outside the courtroom was harmless because it was merely duplicative of the powerful odor that the jury properly experienced at trial. The *Ingersoll-Rand* case—which first identified the Circuit's two standards for evaluating the prejudicial effect of extraneous information on a jury—is instructive here. In *Ingersoll-Rand*, the district court provided the jury with a large notepad after the jury requested a large writing tablet. *See Ingersoll-Rand*, 214 F.3d at 1240–41. Unbeknownst to the district court, the notepad contained nine pages of information written by the plaintiffs' counsel and one of the plaintiff's experts. *See id.* at 1241. On appeal, the *Ingersoll-Rand* Court determined that, under either the "slightest effect" or "presumption of prejudice" standard, the jury's exposure to the extraneous information was harmless because "all the information contained on the notepad was 'cumulative and duplicative' of evidence properly admitted at trial." *See id.* at 1242. It did not matter that the extraneous information was in written form, and thus potentially more potent, because there were mitigating facts—the jury was particularly attentive and was allowed to take notes. *See id.* at 1243.

Similarly, the extraneous information here—the odor in the hall—was duplicative of the marijuana odor properly admitted at trial.[3] Even assuming that the marijuana odor in the hall was more potent than the powerful odor at trial, there were mitigating facts similar to those in *Ingersoll-Rand*: the jury's attention was already honed in on the information at issue—the odor of marijuana emanating from the bundles. When the bundles were presented at trial, all eyes and noses were on the bundles, and the jury had 18 minutes to absorb the sensory information sitting just a few feet away. Even the testimony focused the jury's attention on the smell of marijuana.

There were additional mitigating circumstances. If the jurors experienced a strong smell of marijuana as they passed through the affected area of the hall, they did so only briefly. *See, e.g.*, *United States v. Morgan*, 748 F.3d 1024, 1041 (10th Cir. 2014) (finding harmless improper information presented to jury because it was only one short moment in a trial); *United States v. Schwartz*, No. 14-1162, 2017 WL 3225629 (10th Cir. July 31, 2017) at *4 (same); *United States v. Ashby*, 864 F.2d 690, 694–95 (10th Cir. 1988) (determining that four minutes of deliberation with a biased juror did not taint the jury). If the jurors experienced a strong smell of marijuana as they passed through the affected area of the hall, they did so only after the Court had instructed them not to think about the case as they adjourned for the day. *See Stouffer*, 825 F.3d at 1178 (presuming that jurors will conscientiously observe the instructions and admonitions of the court). And if the jurors experienced a strong smell of marijuana as they passed through the affected area of the hall, they did so only outside the formality of trial, meaning they had physical, mental, and procedural separation from the trial. Finally, at the end of the case, the

---

[3] In addition to *Ingersoll-Rand*, other Tenth Circuit cases have put heavy emphasis on the fact that extraneous information was duplicative. *See, e.g.*, *United States v. Greschner*, 802 F.2d 373, 380 (10th Cir. 1986) (holding harmless the jury's exposure to extraneous newspaper article because the contents of that article had already been admitted in evidence); *Muessig*, 427 F.3d at 865 (holding harmless jury's exposure to extraneous exhibit because the gist of the exhibit had already been presented to the jury).

9

Court instructed the jurors to consider only the evidence presented within the four walls of the courtroom, and to ignore any extraneous sensory information they may have obtained. *See Stouffer*, 825 F.3d at 1178.

As noted, the trial judge is " 'uniquely qualified to appraise the probable effect of information on the jury, the materiality of the extraneous material, and its prejudicial nature.' " *Ingersoll-Rand*, 214 F.3d at 1242 (internal citations omitted). Marshaling its unique advantages, the Court determines that the jury's exposure to the marijuana odor in the hall was harmless and denies Mr. Milne's request for a mistrial based on exposure of extraneous information to the jury.

## II. Mistrial based on the alteration of an admitted exhibit.

The Court also denies Mr. Milne's request for a mistrial based on the government's alteration of an admitted exhibit. Mr. Milne was not prejudiced at trial by the government's alteration of the bundles. After the Court discovered that the government had opened the bundles for testing, the government was never again permitted to display the bundles to the jury, and the jury did not request to see the bundles during its deliberations. Mr. Milne also overstates the significance of the government's alteration for any appeals. (*See* Doc. 91 at 3 ("By tearing open the bundles, the agents destroyed the integrity of Exhibit 1 . . . and the exhibit is thus no longer available for any appeals.").) The government cut a pizza slice-shaped opening in each bundle to extract less than a pinch of marijuana from each bundle. The government then resealed the bundles and the agents who performed the test initialed the area where they had opened the bundles. If the government had simply flipped over the bundles, the agents' initials and the taped-over openings would not be visible. The government's immaterial alterations were not sufficient to prejudice Mr. Milne on any appeals.

Moreover, the government did not act in bad faith by altering the admitted bundles. Under normal circumstances, admitted evidence would have been in the Court's custody, while unadmitted evidence would be in the parties' custody. In this particular case, the Court asked the government to retain custody of the bundles even after they were admitted because the Court was not equipped to store bulk marijuana. The government made the egregious, but innocent, mistake of forgetting that the bundles in its custody had already been admitted and could not be altered.

Because the government did not act in bad faith in altering the bundles, and because Mr. Milne suffered no prejudice from the alteration, the Court denies Mr. Milne's motion for a mistrial on this ground.

### III. Propriety of retrial.

#### A. Government's intent to provoke a mistrial.

After a mistrial, a defendant may only raise the bar of double jeopardy to prevent retrial if the defendant proves that the government *intended* to cause a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 676 (1982) (emphasis added). Trying to keep the shield of double jeopardy handy in case the Court declares a mistrial, Mr. Milne indicts the government for conspiracy to throw the case with intent to provoke a mistrial. (*See* Doc. 91 at 6.) But there is no evidence to support Mr. Milne's theory that the government crafted a Machiavellian scheme to try to get ahead. Although best practice for the government would have been to test all ten bundles to confirm their contents, such testing was not required. *See United States v. Sanchez DeFundora*, 893 F.2d 1173, 1175 (10th Cir. 1990) ("The government need not introduce scientific evidence to prove the identity of a substance.") In response to Mr. Milne's Rule 29 motion, the government sought permission to reopen its case, but this was not an outrageous request—frankly, the Court could have allowed the government to do so. *See Massey v. United States*, 358 F.2d 782, 786 (10th Cir.

1966) (finding no abuse of discretion in allowing the government to twice reopen its case to establish identity of an automobile). As explained above, the government's improper alteration of the bundles was likely an innocent—albeit serious—mistake. And the smell of marijuana in the hall was more likely to be the unforeseen consequence of the government's mistake than to be an intentional act designed to present extraneous information to the jury. The Court finds that the government did not act in bad faith or with the intent to provoke a mistrial.

### B. Unreasonable burden related to retrial.

Mr. Milne adds that he would be unreasonably burdened by another trial. (*See* Doc. 91 at 6.) To buttress his claim, Mr. Milne contends that the government would take the opportunity of a second trial to "repair the failings of its first trial." (*See id.*) But every side naturally tries to fix its failings on retrial. That the prosecution made certain mistakes during the first trial and could learn from those mistakes does not render the subsequent trial unreasonably burdensome for the defendant.

Mr. Milne also says that he "would be denied the opportunity for his second jury to smell the bundles as they were originally presented" at his first trial and that the new jury would not be able to "obtain an accurate sense of the odor" that he experienced. (*See id.*) It is Mr. Milne's right, however, to argue to the jurors that they are not experiencing the same odor that he experienced. *See Dunn*, 961 F. Supp. at 252. In any event, the Court could simply remedy the problem by only permitting a picture of the bundles to be shown to the jury—the Court would not need to reach the more extreme remedy of completely denying retrial.

Finally, Mr. Milne suggests that the government "sprung the news" of its mistakes only after Mr. Milne had testified to learn Mr. Milne's case strategy. (*See id.*) The Court finds no evidence that the government withheld disclosure of its mistakes to give itself an advantage

against Mr. Milne. And it is not as if Mr. Milne wasted a groundbreaking strategy on the first trial: Mr. Milne's story at trial was largely the same one that he already revealed to the government during the suppression hearing. If anyone "sprung" anything on Mr. Milne, it was his co-defendant, Mr. Pavon-Rodriguez. Mr. Pavon-Rodriguez was remarkably credible and sympathetic—there were few dry eyes in the courtroom as he described how he was captured after leaving his wife and young children to ensure the well-being of his brother with Down syndrome in Mexico. After Mr. Milne concluded his closing argument, Mr. Pavon-Rodriguez, with little warning, opened his final remarks by telling the jury that one defendant had to be lying. Mr. Pavon-Rodriguez then proceeded to throw Mr. Milne under the proverbial bus. In truth, Mr. Milne was prosecuted by Mr. Pavon-Rodriguez almost as much as he was prosecuted by the government.

To be clear, Mr. Milne is not entitled to another trial. But even if Mr. Milne were tried again on the same charges, he would not be unreasonably burdened.

## CONCLUSION

For the reasons provided above, the Court denies Mr. Milne's motion for a mistrial (Doc. 91). To the extent the mistrial motion morphed into a motion to dismiss the case, the Court denies that motion on the same grounds. The Court denies Mr. Milne's request for a finding that the government acted with intent to provoke a mistrial.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**